The facts as they appeared below were the following: The lessor of the plaintiff purchased the lands in dispute of James Atkins and John Thames, and made title as follows: "In December, 1809, a judgment was obtained by Dew and Barnes against Philemon Hodges for £ 829 3 9, and an execution issued thereon, on which a return was made by the sheriff that he had levied on several tracts of land, and among others "the land where P. Hodges lives, with about 2,000 acres of land." A venditioni exponas issued, commanding a sale of the land levied on, and the sheriff returned thereon a sale of the several tracts; and as to the disputed premises the return was in these words: "1,920 acres of the land belonging to the home plantation, bid off by James Atkins at £ 650 10; 80 acres remainder of said lands, bid off by James Atkins at £ 2 10." The sheriff on 30 April, 1812, executed a deed to Thames and Atkins for land, reciting the execution and stating that he had levied "on sundry tracts or parcels of land situate, lying, and being in the county of Cumberland, on the lower Little River, including the houses, lands and improvements, whereon said Hodges then lived and now lives, it being the whole of the lands said Hodges owned in that body in Cumberland *Page 27 
County, and all the different tracts joining each other, containing by estimation 2,200 acres, more or less." The consideration money of the deed was $1,301, equal to £ 650 10, and the sale took place in 1810. Thames and Atkins conveyed to the lessor of the plaintiff. (52)
The 1,920 acres were set up for sale by the sheriff, en masse, and included sundry tracts adjoining each other. The house in which the defendant resided at the time of the sale was 2 miles distant from that in which he lived at the time the deed was executed, and they were on different tracts of the 1,920 acres. Various objections were made below to plaintiff's title, among others, the two following: That the sheriff had levied on and sold to Thames and Atkins 2,000 acres, more or less, and had conveyed 2,200 acres, more or less, and that the sale of the 1,920 acres,en masse, was, in law, a fraud and vitiated the whole sale. On the last mentioned point the court instructed the jury that a sheriff is bound to use such means in the sale of property under execution as any ordinary and prudent man would do in the sale of his own property, in order to make it bring the best possible price; and it was for the jury to say, as on this case, whether under the circumstances of it it was apparent that the sheriff had sold the land improperly in making the sale en masse, and thereby sacrificed the property; if so, no title in the property passed to the plaintiff; if otherwise, the sale was valid; and that their finding upon this part of the case should be regulated accordingly. A verdict was returned for the lessor of the plaintiff; and the case stood before this Court on a rule to show cause wherefore a new trial should not be granted.
This case is much stronger for the purchaser than the case of (55)Wilson v. Twitty, ante, 44, decided at this term, and to which we refer for the principles governing the case. The rule for a new trial must be discharged.
Cited: Huggins v. Ketchum, 20 N.C. 557; Jones v. Lewis, 30 N.C. 73;McCanless v. Flinchum, 98 N.C. 365; Williams v. Dunn, 163 N.C. 217. *Page 28